IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **SHARON Y. NEAL**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     **Civil Action No. 09-1658** |
| | )     **Judge Arthur J. Schwab** |
| **MICHAEL J. ASTRUE**, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## <u>MEMORANDUM OPINION</u>

## I.      Introduction

Plaintiff, Sharon Neal (hereinafter "Plaintiff"), brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) of the Social Security Act ("the Act"), seeking review of the final determination of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income ("SSI") and disability insurance benefits ("DIB"). Consistent with the customary practice in the Western District of Pennsylvania, the parties have submitted cross motions for summary judgment on the record developed at the administrative proceedings. After careful consideration of the Administrative Law Judge's ("ALJ") Decision, the memoranda of the parties, and the entire record, the Court will grant the Plaintiff's Motion for Summary Judgment and deny Commissioner's Motion for Summary Judgment.

1

## II. Procedural History

Plaintiff filed an application for SSI and DIB on February 8, 2007, alleging disability beginning on January 1, 2003. R. at 9, 74-81. Plaintiff's claim was denied on July 21, 2007 and she thereafter requested a hearing. R. at 54-65  The hearing was held on January 9, 2009 before ALJ James Bukes. R. at 18-34. Plaintiff, appearing with her disability representative, Robert W. Gillikin, testified at the hearing along with the vocational expert, Karen Krull. *Id.*

The ALJ issued a decision on March 10, 2009, finding that Plaintiff was not disabled. R. at 9-17. The ALJ found that Plaintiff was capable of performing sedentary work with limitations. *Id.* The ALJ found that Plaintiff could perform jobs that exist in significant numbers in the national economy such as alarm monitor, hand packer, and telemarketer. *Id.* On October 28, 2009, the Appeals Council affirmed the ALJ's decision, thus becoming the final decision of the Commissioner. R. at 1-3. Plaintiff then filed her complaint herein seeking judicial review of the Commissioner's final decision.

## III. Statement of the Case

In the decision dated March 10, 2009, the ALJ made the following specific findings:

1.  The claimant meets the insured status requirements of the Social Security Act through September 30, 2006.

2.  The claimant has not engaged in "substantial gainful activity" since January 1, 2003, the alleged onset date (20 C.F.R. 404.1520 (b), 404.1571 *et seq*).

3.  The claimant has the following severe impairments: obesity, Grave's disease, arthritis of the lower back, carpal tunnel syndrom, asthma, and depression (20 C.F.R. 404.1521 *et seq*. and 416.921 *et esq*.).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R.404.1525, 404.1526, 416.925 and 416.926).

5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) involving a sit/stand option and avoiding: fine fingering with the right dominant hand; crowds; assembly line pace; and temperature extremes, wetness, humidity, fumes, odors, and dust.

6.  The claimant is unable to perform any past relevant work (20 C.F.R. 404.1565 and 416.965).

7.  The claimant was born on September 23, 1959, and was 43 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 C.F.R. 404.1563 and 416.963).

8.  The claimant has at least a high school education and is able to communicate in English (20 C.F.R. 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disable," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. 404.1569, 404.1569a, 416.969, ans 416.969a).

11. The claimant has not been under a disability as defined in the Social Security Act, from January 1, 2003, through the date of this decision (20 C.F.R. 404.1520(g) and 416.920(g)).

R. at 11-16.

## IV.   Standards of Review

Judicial review of the Commissioner's final decisions on disability claims is provided by

statute. 42 U.S.C. §§ 405(g)[1] and 1383(c)(3)[2]. Section 405(g) permits a district court to review

---

[1]Section 405(g) provides in pertinent part:
Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action ... brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business ...

transcripts and records upon which a determination of the Commissioner is based. Because the standards for eligibility under Title II (42 U.S.C. §§ 401-433, regarding Disability Insurance Benefits, or "DIB"), and judicial review thereof, are virtually identical to the standards under Title XVI (42 U.S.C. §§ 1381-1383f, regarding Supplemental Security Income, or "SSI"), regulations and decisions rendered under the Title II disability standard, 42 U.S.C. § 423, are pertinent and applicable in Title XVI decisions rendered under 42 U.S.C. § 1381(a). *Sullivan v. Zebley*, 493 U.S. 521, 525 n. 3 (1990); *Burns v. Barnhart*, 312 F.3d 113, 119 n. 1 (3d Cir.2002).

    Substantial Evidence

    If supported by substantial evidence, the Commissioner's factual findings must be accepted as conclusive. *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir.1995); *Wallace v. Secretary of HHS*, 722 F.2d 1150, 1152 (3d Cir.1983). The district court's function is to determine whether the record, as a whole, contains substantial evidence to support the Commissioner's findings. *See Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir.1994) (citing *Richardson v. Perales*, 402 U.S. 389 (1971)). The Supreme Court has explained that "substantial evidence" means "more than a mere scintilla" of evidence, but rather, is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (citation omitted). *See Rutherford v. Barnhart*,

---

42 U.S.C. § 405(g).

[2]Section 1383(c)(3) provides in pertinent part:
The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.
42 U.S.C. § 1383(c)(3).

399 F.3d 546, 552 (3d Cir.2005); *Ventura*, 55 F.3d at 901 (quoting *Richardson*); *Stunkard v. Secretary of HHS*, 841 F.2d 57, 59 (3d Cir.1988).

The Court of Appeals for the Third Circuit has referred to this standard as "less than a preponderance of the evidence but more than a mere scintilla." *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir.2002), quoting *Jesurum v. Secretary of the Dep't of Health and Human Servs.*, 48 F.3d 114, 117 (3d Cir.1995). "A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir.1993), quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir.1983). The substantial evidence standard allows a court to review a decision of an ALJ, yet avoid interference with the administrative responsibilities of the Commissioner. *See Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir.1983).

In reviewing the record for substantial evidence, the district court does not weigh the evidence or substitute its own conclusions for those of the fact finder. *Rutherford*, 399 F.3d at 552. In making this determination, the district court considers and reviews only those findings upon which the ALJ based his or her decision, and cannot rectify errors, omissions or gaps in the medical record by supplying additional findings from its own independent analysis of portions of the record which were not mentioned or discussed by the ALJ. *Fargnoli v. Massarini*, 247 F.3d 34, 44 n. 7 (3d Cir.2001) ("The District Court, apparently recognizing the ALJ's failure to consider all of the relevant and probative evidence, attempted to rectify this error by relying on medical records found in its own independent analysis, and which were not mentioned by the ALJ. This runs counter to the teaching of *SEC v. Chenery Corp.*, 318 U.S. 80 (1943), that '[t]he grounds upon which an

administrative order must be judged are those upon which the record discloses that its action was based.'" Id. at 87; parallel and other citations omitted).

<u>Five Step Determination Process</u>

To qualify for DIB under Title II of the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir.1987); 42 U.S.C. § 423(d)(1) (1982). Similarly, to qualify for SSI, the claimant must show "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1383c(a)(3)(A).

When resolving the issue of whether a claimant is disabled and whether the claimant is entitled to either DIB or SSI benefits, the Commissioner utilizes the familiar five-step sequential evaluation. 20 C.F.R. §§ 404.1520 and 416.920 (1995). *See Sullivan*, 493 U.S. at 525. The Court of Appeals for the Third Circuit summarized this five-step process in *Plummer v. Apfel*, 186 F.3d 422 (3d Cir .1999):

> In *step one*, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied.... In *step two*, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that her impairments are "severe", she is ineligible for disability benefits.
>
> In *step three*, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. *Step four* requires the ALJ to consider whether the claimant retains the residual functional

> capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work....
>
> If the claimant is unable to resume her former occupation, the evaluation moves to the final *step [five]*. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ *must analyze the cumulative effect of all the claimant's impairments* in determining whether she is capable of performing work and is not disabled. The ALJ will often seek the assistance of a vocational expert at this fifth step...

*Plummer*, 186 F.3d at 428 (italics supplied; certain citations omitted). *See also Rutherford*, 399 F.3d at 551 ("In the first four steps the burden is on the claimant to show that she (1) is not currently engaged in gainful employment because she (2) is suffering from a severe impairment (3) that is listed in an appendix (or is equivalent to such a listed condition) or (4) that leaves her lacking the RFC to return to her previous employment (Reg. §§ 920(a) to (e)). If the claimant satisfies step 3, she is considered per se disabled. If the claimant instead satisfies step 4, the burden then shifts to the Commissioner at step 5 to show that other jobs exist in significant numbers in the national economy that the claimant could perform (Reg. § 920(f)).").

Thus, a claimant may demonstrate that his or her impairment is of sufficient severity to qualify for benefits in one of two ways:

(1) by introducing medical evidence that the claimant is disabled *per se* because he or she meets the criteria for one or more of a number of serious Listed Impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1, or that the impairment is *equivalent* to a Listed Impairment. *See Heckler v. Campbell*, 461 U.S. 458, 460 (1983); *Stunkard*, 841 F.2d at 59; *Kangas,* 823 F.2d at 777 (Steps 1-3); or,

(2) in the event that claimant suffers from a less severe impairment, he or she will be deemed disabled where he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy...." *Campbell*, 461 U.S. at 461 (citing 42 U.S.C. § 423(d)(2)(A)). In order to prove disability under this second method, plaintiff must first demonstrate the existence of a medically determinable disability that precludes him or her from returning to his or her former job (Steps 1-2, 4). *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777. Once it is shown that he or she is unable to resume his or her previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given plaintiff's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Campbell*, 461 U.S. at 461; *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir.2003); *Stunkard*, 842 F.2d at 59; *Kangas*, 823 F.2d at 777.

<u>Vocational Expert-Hypothetical Questions</u>

The determination of whether a claimant retains the RFC to perform jobs existing in the workforce at step 5 is frequently based in large measure on testimony provided by the vocational expert. *Rutherford*, 399 F.3d at 553, citing *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir.1984) (citations omitted). Where a hypothetical question to the VE accurately sets forth all of a claimant's significant impairments and restrictions in activities, physical and mental, as found by the ALJ or as uncontradicted on the medical record, the expert's response as to the existence of jobs in the national economy which the claimant is capable of performing may be considered substantial evidence in support of the ALJ's findings on claimant's RFC. *See, e.g., Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir.2002), citing *Podedworny*, 745 F.2d at 218 and *Chrupcala v. Heckler*, 829 F.2d,

1276 (3d Cir.1987) (leading cases on the use of hypothetical questions to VEs)[3]. *See also Plummer*, 186 F.3d at 428 (factors to be considered in formulating hypothetical questions include medical impairments, age, education, work experience and RFC); *Boone*, 353 F.3d at 205-06 ("At the fifth step of the evaluation process, 'the ALJ often seeks advisory testimony from a vocational expert.'") Objections to the adequacy of an ALJ's hypothetical questions to a vocational expert "often boil down to attacks on the RFC assessment itself." *Rutherford*, 399 F.3d at 554 n. 8.

Additionally, the ALJ will often consult the Dictionary of Occupational Titles ("DOT"), a publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy, in order to determine whether any jobs exist that a claimant can perform. *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir.2002); *see also Id.* at 126 (The "Social Security Administration has taken administrative notice of the reliability of the job information contained in the [DOT].") (citing 20 C.F.R. § 416.966(d) (2002)). While an unexplained conflict between a VE's testimony and the relevant DOT job descriptions does not *necessarily* require reversal or remand of an ALJ's determination, the Court of Appeals for the Third Circuit requires the ALJ to address and resolve any material inconsistencies or conflicts between the DOT descriptions and the VE's testimony, and failure to do so will necessitate a remand. *Boone*, 353 F.3d at 206.

---

[3]Conversely, because the hypothetical question posed to a vocational expert "must reflect all of a claimant's impairments," *Chrupcala*, 829 F.2d at 1276, where there exists on the record "medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence." *Podedworny*, 745 F.2d at 218.

<u>Multiple Impairments</u>

Where a claimant has multiple impairments which, individually, may not reach the level of severity necessary to qualify as a Listed Impairment, the ALJ/ Commissioner nevertheless must consider all of the claimant's impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Burnett*, 220 F.3d at 122 ("the ALJ must consider the combined effect of multiple impairments, regardless of their severity"); *Bailey v. Sullivan*, 885 F.2d 52 (3d Cir.1989) ("in determining an individual's eligibility for benefits, the 'Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity,'"), *citing* 42 U.S.C. § 423(d)(2)(c), and 20 C.F.R. § § 404.1523, 416.923).

Section 404.1523 of the regulations, 20 C.F.R. § 404.1523, Multiple impairments, provides:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled (see § 404.1520).

Even if a claimant's impairment does not meet the criteria specified in the listings, he must be found disabled if his condition is *equivalent* to a listed impairment. 20 C.F.R. § 404.1520(d). When a claimant presents more than one impairment, "the combined effect of the impairment must be considered before the Secretary denies the payment of disability benefits." *Bittel v. Richardson*, 441 F.2d 1193, 1195 (3d Cir.1971). To that end, the ALJ may not just make conclusory statements

that the impairments do not equal a listed impairment in combination or alone, but rather, is required to set forth the reasons for his or her decision, and *specifically* explain why he or she found a claimant's impairments did not, alone or in combination, equal in severity one of the listed impairments. *Fargnoli*, 247 F.3d at 40 n. 4, *citing Burnett*, 220 F.3d at 119-20.

If the ALJ or Commissioner believes the medical evidence is inconclusive or unclear as to whether claimant is unable to return to past employment or perform substantial gainful activities, it is incumbent upon the ALJ to "secure whatever evidence [he/she] believed was needed to make a sound determination." *Ferguson*, 765 F.2d 36.

<u>Claimant's Subjective Complaints of Impairments and Pain</u>

An ALJ must do more than simply state factual conclusions, but instead must make specific findings of fact to support his or her ultimate findings. *Stewart*, 714 F.2d at 290. The ALJ must consider all medical evidence in the record and provide adequate explanations for disregarding or rejecting evidence, especially when testimony of the claimant's treating physician is rejected. *See Wier on Behalf of Wier v. Heckler*, 734 F.2d 955, 961 (3d Cir.1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir.1981). He or she must also give serious consideration to the claimant's subjective complaints, even when those assertions are not confirmed fully by objective medical evidence. *See Mason v. Shalala*, 994 F.2d 1058, 1067-68 (3d Cir.1993); *Welch v. Heckler*, 808 F.2d 264, 270 (3d Cir.1986).

Pain alone, if sufficiently severe, may be a disabling impairment that prevents a claimant from performing any substantial gainful work. *E.g., Carter v. Railroad Retirement Board*, 834 F.2d 62, 65, *relying on Green v. Schweiker*, 749 F.2d 1066, 1068 (3d Cir.1984); *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir.1981); *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir.1979). Similarly,

an ALJ must give great weight to a claimant's subjective description of inability to perform even light or sedentary work when this testimony is supported by competent evidence. *Schaudeck v. Commissioner of Social Security*, 181 F.3d 429, 433 (3d Cir.1999), *relying on Dobrowolsky*. Where a medical impairment that could reasonably cause the alleged symptoms exists, the ALJ must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work. This obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it. *See* 20 C.F.R. § 404.1529(c). *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir.1999).

But, if an ALJ concludes the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision. *See Cotter*, 642 F.2d at 705. Our Court of Appeals has stated: "in all cases in which pain or other symptoms are alleged, the determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations. The rationale must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's ability to work." *Schaudeck*, 181 F.3d at 433.

Subjective complaints of pain need not be "fully confirmed" by objective medical evidence in order to be afforded significant weight. *Smith*, 637 F.2d at 972; *Bittel*, 441 F.2d at 1195. That is, while "there must be objective medical evidence of some condition that could reasonably produce pain, *there need not be objective evidence of the pain itself*." *Green*, 749 F.2d at 1070- 71 (emphasis added), *quoted in Mason*, 994 F.2d at 1067. Where a claimant's testimony as to pain is reasonably supported by medical evidence, neither the Commissioner nor the ALJ may discount claimant's pain

*without contrary medical evidence. Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir.1985); *Chrupcala v. Heckler*, 829 F.2d 1269, 1275-76 (3d Cir.1987); *Akers v. Callahan*, 997 F.Supp. 648, 658 (W.D.Pa.1998). "Once a claimant has submitted sufficient evidence to support his or her claim of disability, the Appeals Council may not base its decision upon mere disbelief of the claimant's evidence. Instead, the Secretary must present *evidence to refute the claim. See Smith v. Califano*, 637 F.2d 968, 972 (3d Cir.1981) (where claimant's testimony is reasonably supported by medical evidence, the finder of fact may not discount the testimony without contrary medical evidence)." *Williams v. Sullivan*, 970 F.3d 1178, 1184-85 (3d Cir.1992) (emphasis added), *cert. denied* 507 U.S. 924 (1993).

In making his or her determination, the ALJ must consider and weigh all of the evidence, both medical and non-medical, that support a claimant's subjective testimony about symptoms and the ability to work and perform activities, and must specifically explain his or her reasons for rejecting such supporting evidence. *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 119-20 (3d Cir.2000). Moreover, an ALJ may not substitute his or her evaluation of medical records and documents for that of a treating physician; "an ALJ is not free to set his own expertise against that of a physician who presents competent evidence 'by independently' reviewing and interpreting the laboratory reports ...." *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir.1985).

<u>Medical Opinions of Treating Sources</u>

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.' *Plummer*, 186 F.3d at 429 (*quoting Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987)) .... "

13

*Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir.2000) (additional citations omitted). The ALJ must weigh conflicting medical evidence and can chose whom to credit, but "cannot reject evidence for no reason or for the wrong reason." *Id.* at 317, *quoting Plummer*, 186 F.3d at 429 (additional citations omitted). The ALJ must consider all medical findings that support a treating physician's assessment that a claimant is disabled, and can only reject a treating physician's opinion on the basis of contradictory medical evidence, not on the ALJ's own credibility judgments, speculation or lay opinion. *Morales*, 225 F.3d at 317-318 (citations omitted).

Moreover, the Commissioner/ALJ:

must "explicitly" weigh all relevant, probative and available evidence.... [and] must provide some explanation for a rejection of probative evidence which would suggest a contrary disposition.... The [Commissioner] may properly accept some parts of the medical evidence and reject other parts, but she must consider all the evidence and *give some reason for discounting* the evidence she rejects.

*Adorno*, 40 F.3d at 48 (emphasis added; citations omitted). *See also Fargnoli*, 247 F.3d at 42-43 (although an ALJ may weigh conflicting medical and other evidence, he or she must give some indication of the evidence that he or she rejects and explain the reasons for discounting the evidence; where an ALJ failed to mention significant contradictory evidence or findings, the Court was left to wonder whether he considered and rejected them, or failed to consider them at all, giving the Court "little choice but to remand for a comprehensive analysis of the evidence consistent with the requirements of the applicable regulations and the law of this circuit...."); *Burnett*, 220 F.3d at 121 ("In making a residual functional capacity determination, the ALJ must consider all evidence before him.... Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence.... 'In the absence

of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.' *Cotter*, 642 F.2d at 705.") (additional citations omitted).

Medical Source Opinion of "Disability"

A medical statement or opinion expressed by a treating source on a matter reserved for the Commissioner, such as a statement that the claimant is "disabled" or "unable to work," is not dispositive or controlling. *Adorno*, 40 F.3d at 47-48, *citing Wright v. Sulllivan*, 900 F.2d 675, 683 (3d Cir.1990) ("this type of [medical] conclusion cannot be controlling. 20 C.F.R. § 404.1527 (1989) indicates that [a] statement by your physician that you are disabled or unable to work does not mean that we will determine that you are disabled. We have to review the medical findings and other evidence that support a physician's statement that you are disabled.") (internal citations omitted).

The rules and regulations of the Commissioner and the SSA make a distinction between (I) medical opinions about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, what the claimant can still do despite impairments, and physical or mental restrictions, on the one hand, and (ii) medical opinions on matters reserved for the Commissioner, such as an opinion that a claimant is "disabled" or "unable to work," on the other. The latter type of medical opinions are on matters which require dispositive administrative findings that would direct a determination of disability. *Compare* 20 C.F.R. § 404.1527(a-d) (2002) (consideration and weighing of medical opinions) *with* 20 C.F.R. § 404.1527(e) (2002) (distinguishing medical opinions on matters reserved for the Commissioner).

The regulations state that the SSA will "always consider medical opinions in your case record," and states the circumstances in which an opinion of a treating source is entitled to

"controlling weight." 20 C.F.R. § 404.1527(b), (d) (2002)[4]. Medical opinions on matters reserved for the Commissioner are not entitled to "any special significance," although they must always be considered. 20 C.F.R. § 404.1527(e)(1-2) (2002). The Commissioner's Social Security Ruling ("SSR") 96-2p, "Policy Interpretation Ruling, Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions," and SSR 96-5p, "Policy Interpretation Ruling, Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner," explain in some detail the distinction between medical opinions entitled to controlling weight and those reserved to the Commissioner.

_____

[4]Subsection (d) states: "How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider [a list of] factors in deciding the weight we give to any medical opinion." 20 C.F.R. 404.1527(d) (2002). Subsection (d)(2) describes the "treatment relationship," and states:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d) (6) of this section in determining the weight to give the opinion. *We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.*

20 C.F.R. § 404.1527(d)(2) (2002) (emphasis added).

SSR 96-2p explains that a "finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected. It may still be entitled to deference and be adopted by the adjudicator." SSR 96-2p, Purpose No. 7. Where a medical opinion is not entitled to controlling weight or special significance because it is on an issue reserved for the Commissioner,[5] these Social Security Rulings provide that, because an adjudicator is required to evaluate *all* evidence in the record that may bear on the determination or decision of disability, "adjudicators must *always* carefully consider medical source opinions about any issue, including opinions about those issues that are reserved to the Commissioner," and that such opinions "must *never* be ignored...." SSR 96-5p, Policy Interpretation, (emphasis added). Moreover, because the treating source's opinion and other evidence is "important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion." *Id.*

A medical opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] case record ..." 20 C.F.R. § 404.1527(d)(2). *See* note 4, *supra*. Where an opinion by a medical source is not entitled to controlling weight, the following factors are to be considered: the examining relationship, the treatment relationship (its length, frequency of

_____

[5]SSR 96-5p lists several examples of such issues, including whether an individual's impairment(s) meets or equals in severity a Listed Impairment, what an individual's RFC is and whether that RFC prevents him or her from returning to his or her past relevant work, and whether an individual is "disabled" under the Act.

examination, and its nature and extent), supportability by clinical and laboratory signs, consistency, specialization and other miscellaneous factors. 20 C.F.R. § 404.1527(d)(1- 6).

State Agency Medical and Psychological Consultants

Medical and psychological consultants of a state agency who evaluate a claimant based upon a review of the medical record "are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence, except for the ultimate determination about whether [a claimant is] disabled." 20 C.F.R. § 404.1527(f)(2)(I). *See also* SSR 96-6p: Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants ("1. Findings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of non-examining sources at the administrative law judge and Appeals Council levels of administrative review. 2. Administrative law judges and the Appeals Council may not ignore these opinions and must explain the weight given to these opinions in their decisions.")

V.     **Discussion**

Plaintiff raises three arguments as to why the ALJ's decision denying DIB and SSI lack the support of substantial evidence in the record. In particular, Plaintiff argues that the ALJ erred, as a matter of law, by failing to consider her obesity in combination with her other impairments that existed prior to December 2006. With respect to Plaintiff's SSI claim, Plaintiff argues that the ALJ's residual functional capacity ("RFC") assessment failed to take into account all of Plaintiff's mental

limitations.   Additionally, Plaintiff argues as to her SSI claim that the ALJ failed to consider or acknowledge that a "borderline age" situation existed, and as a result the ALJ improperly applied the Medical-Vocational Guidelines in a mechanical fashion.   The Defendant argues only that the ALJ's decision was supported by substantial evidence.

*1.     Failure to Consider Obesity in Combination With Other Impairments*

As to Plaintiff's first argument, she cites the recent United States Court of Appeals for the Third Circuit decision in *Diaz v. Commissioner of Social Secuirty*, 557 F.3d 500 (3d Cir. 2009), for the proposition that an ALJ's decision is not supported by substantial evidence when he fails to consider Plaintiff's obesity in combination with her other impairments.   In *Diaz,* the Court of Appeals held that where a claimant's obesity is found to constitute a severe impairment, the ALJ must discuss what impact, alone or in combination with other severe impairments, claimant's obesity causes to his or her ability to work. *Diaz*, 557 F.3d at 504 ("an ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step.").   While the Court did not mandate any set of "magic" words that must be used by the ALJ in discussing limitations arising from a severe impairment of obesity, the Court did reiterate its requirement that an ALJ's "discussion of the evidence" and "explanation of reasoning" must be specific enough to enable meaningful judicial review. *Id* at 504. (citing *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 120 (3d Cir. 2000); *Jones v. Barnhart*, 364 F.3d 501, 505 & n.3 (3d Cir. 2004)).

The *Diaz* Court went on to state that an ALJ's vague reference to the claimant's examining physicians' reports could not be considered an adequate implicit discussion of the evidence or explanation of the ALJ's reasoning regarding the limitations arising from obesity when the ALJ has

found at step two that obesity was a severe impairment. *Diaz*, 557 F.3d at 504 (distinguishing *Rutherford v. Barnhart*, 339 F.3d 546 (3d Cir. 2005)). Without an explicit analysis of the cumulative impact of obesity with other impairments on a claimant's RFC, with some factual specificity, the Court cannot properly conduct its reviewing function. *Id.*

In this case, the ALJ made the finding at step two that Plaintiff had the severe impairment of obesity. R. at 11. In his decision, the ALJ did mention that Plaintiff was seeking to have bariatric surgery, however, as to step three, the ALJ made no mention of Plaintiff's obesity. R. at 11-13. In making his RFC findings, the ALJ stated "[t]his residual functional capacity also recognizes that obesity can have an adverse affect on coexisting impairments (SSR 02-1p)." R. at 14. Nowhere else in his decision does the ALJ mention Plaintiff's obesity.

Plaintiff argues that one sentence, ("obesity can have an adverse affect on coexisting impairments") is inadequate to permit meaningful judicial review. The Court agrees. Although the ALJ clearly recognized that Plaintiff's had impairments resulting from her obesity, it is unclear how, if at all, the ALJ factored the limitations resulting from Plaintiff's obesity into his RFC assessment. In particular, the ALJ's statement that "obesity *can* have an adverse affect on coexisting impairments" R. at 14 (emphasis added), is, at best, ambiguous, and it does <u>not</u> constitute a finding that obesity <u>did or did not</u> have an adverse effect on Plaintiff's impairments in <u>this</u> case. Furthermore, as stated in *Diaz*, if obesity is found to be a severe impairment, it must be considered at step three. *Diaz*, 557 F.3d at 504. The ALJ's decision contains no discussion as to whether Plaintiff's obesity alone and in combination with her other impairments met or medically equaled any of the listed impairments. As a result, there is no substantial evidence to support the ALJ's findings as to Plaintiff's RFC or the ALJ's determination at step three.

*2.     ALJ's RFC Determination*

Plaintiff's second argument is that the ALJ erred in his RFC assessment because he improperly rejected Plaintiff's treating psychiatrist, Dr. Demmler Schenk's opinions as being inconsistent with Dr. Schenk's own treatment notes.

With respect to Dr. Schnek's opinions, the ALJ stated the following:

> In making this determination, I disagree with the conclusions of Dr. Schenk and Dr. Dhobale because of the unexplained inconsistencies between their treatment notes and the opinions offered on the claimant's ability to perform work activities. After meeting the claimant twice, Dr. Schenk had diagnosed the claimant with a moderate degree of depression and had reported her symptoms to be slightly decreased. Yet, only days later when he completed the work assessment for the claimant's disability attorney, he reported the claimant having so severe symptoms that she would be unable to maintain a schedule or work routine on a consistent basis. I am also skeptical of the claimant's motivation in seeking mental health treatment just prior to the hearing.

R. at 14.

In this case the ALJ interpreted Dr. Schnek's treatment notes as being inconsistent with his assessment of Plaintiff having severe limitations due to major depressive disorder, and generalized anxiety disorder. Plaintiff points out that the ALJ's rejection based on inconsistent treatment notes is based on a single reference in the notes, taken out of context, that Plaintiff had a slight decrease in her symptoms. The United States Court of Appeals for the Third Circuit has recently reiterated that "a doctor's observation that a patient is 'stable and well controlled with medication' during treatment does not [necessarily] support the medical conclusion that [the patient] can return to work." *Brownawell v. Commissioner of Social Security*, 554 F.3d 352, 356 (3d Cir. 2008)(quoting

*Morales*, 225 F.3d at 319).  Furthermore, the Court of Appeals for the Third Circuit stated that medical assessments of a condition at the time of examination are to be distinguished from the assessment of the ability to function in a work setting, and such differing assessments are not to be automatically assumed to be contradictory. *Brownawell*, 554 F.3d at 356.  "[T]his Court has admonished ALJs who have used such reasoning, noting the distinction between a doctor's notes for purposes of treatment and that doctor's ultimate opinion of the claimant's ability to work." *Id*. (citation omitted).

In the referenced treatment note, Dr. Schenk did indeed state that Plaintiff had an improved mood since their first meeting, however, he noted that she still had passive suicidal ideation. R. at 361.  As a result, the ALJ should have made, and explained the distinction between Dr. Schenk's treatment notes and his opinion as to Plaintiff's mental limitations before finding the two internally inconsistent, as stated in *Brownawell*.  Furthermore, the ALJ's subjective skepticism of Plaintiff's mental limitation based on the timing of her treatment is not medical evidence that can be used to reject the opinion of a treating physician.

As stated above, "an ALJ may not make 'speculative inferences from medical reports' and may reject 'a treating physician's opinion outright only on the basis of contradictory medical evidence' and not due to his or her own credibility judgment, speculation or lay opinion." *Morales*, 225 F.3d at 317 (citations omitted).  The Court of Appeals has warned that an ALJ cannot disregard a "medical opinion based solely on his own 'amorphous impressions, gleaned from the record and from his evaluation of [the claimant]'s credibility." *Id*. at 318 (quoting *Kent*, 710 F.2d at 115).  As a result, on remand the ALJ will have to reconsider the proper weight to be given Dr. Schenk's

opinions and reconsider the severity of Plaintiff's mental limitations, in conjunction with her other impairments.

3.    *Borderline Age*

Plaintiff's final argument is that the ALJ failed to acknowledge or consider that a "borderline age" situation existed and as a result, he erroneously applied the grids in a mechanical fashion. The regulations regarding age as a vocational factor state:

> We will not apply the age categories mechanically in a borderline situation. If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors in your case.

20 C.F.R. § 404.1563(b). At the time of the ALJ's decision, Plaintiff was approximately six months away from her fiftieth birthday. This put Plaintiff in between the categories of a "Younger person" and "Person closely approaching advanced age."[6] The United States Court of Appeals for the Third Circuit has held that where the ALJ had not applied §404.1563(b), and if the application of that regulation could change the ALJ's determination, the matter must be remanded for further consideration. *Kane v. Heckler*, 776 F.2d 1130, 1134 (3d Cir. 1985).

---

[6](c) Younger person. If you are a younger person (under age 50), we generally do not consider that your age will seriously affect your ability to adjust to other work. However, in some circumstances, we consider that persons age 45-49 are more limited in their ability to adjust to other work than persons who have not attained age 45. See Rule 201.17 in appendix 2.

(d) Person closely approaching advanced age. If you are closely approaching advanced age (age 50-54), we will consider that your age along with severe impairment(s) and limited work experience may seriously affect your ability to adjust to other work.

20 C.F.R. §404.1563

Although there is no clear cut rule for when a borderline age situation exists, courts have found borderline situations for claimants that were between nine and eleven months from the next higher age category. *Martin v. Astrue*, Civ. No. 07-1316, 2008 WL 3071484, *4 (W.D.Pa. Aug. 1, 2008)(citing *Rosado v. Bowen*, No. 85-5581, 1986 WL 15004 (E.D.Pa. Dec. 30, 1986); *Perkins v. Heckler*, No. 85-3907, 1986 WL 11831 (E.D.Pa. Oct. 20, 1986)). For this case, when viewing the Medical-Vocational Guidelines for claimants limited to sedentary work, Rule 201.14, if Plaintiff's previous work experience was found to be non-transferable the Rules would direct a decision of disabled under the Act. 20 C.F.R. Pt. 404 Sub.Pt. P, Appx 2 sec. 201.14.[7] In the ALJ's decision, he specifically did not make a finding as to transferability stating "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled' whether or not the claimant has transferable job skills." R. at 15. Therefore, the record does not eliminate the possibility that if Plaintiff were considered to be a person closely approaching advanced age the ALJ's decision would have resulted in a finding of disability. Since there is no discussion or any indication that the ALJ considered Plaintiff's borderline age situation, this case must be remanded for reconsideration on this issue.

---

[7]Rule 201.14 states that if the maximum sustained work capability is limited to sedentary as a result of severe medical determinable impairment(s), the claimant is of closely approaching advanced age, the claimant's education is high school graduate or more - does not provide for direct entry into skilled work, previous work experience is skilled or semi-skilled - skills not transferable, then the decision is directed to be disabled.

20 C.F.R. Pt. 404 Sub.Pt. P, Appx 2, Sec. 201.14.

**VI.    Conclusion**

Because the ALJ erred in considering Plaintiff's obesity, mental limitations and borderline age situation, this case must be remanded and reconsidered to properly determine Plaintiff's RFC and whether in fact, the Plaintiff has an impairment or combination of impairments which meets or medically equals the Listings. Plaintiff's motion for summary judgment will be granted, the Commissioner's motion for summary judgment will be denied, and this case will be remanded for reconsideration consistent with this opinion.

An appropriate order will follow.

<u>s/ Arthur J. Schwab</u>
Arthur J. Schwab
United States District Judge

Dated:       July 30, 2010
cc:          All counsel of record.